Good morning. My name is Sheldon Waxman. I represent Erwin Schiff. May it please the court, co-counsel, counsel for the government. Mr. Schiff was and is competent to cooperate with a competent attorney, given enough time to become acquainted with his defense and witnesses. He is aware of the court proceedings and nature of the charges against him, but he was not competent to represent himself. The definition of a delusion, according to Webster's New Collegiate, is to be a persistent, false, psychotic belief regarding the self or persons or objects outside the self. We know so little about the mind and are only at the beginning of the understanding about the brain. We don't know what causes psychosis and there are no cures. There is a very rare delusion called cat grass delusion, where the person so afflicted misidentifies faces and recognizes people who are not the delusional person they think they are. No amount of reasoning can persuade them of their errors, and for them, the voices are real, whether they are medicated or not. Mr. Schiff believes that a United States court is going to verify his theory and will invalidate the income tax. It's almost laughable, except that an 80-year-old man, one-eyed, deaf, is in prison for the rest of his life. It was error for Judge Dawson not to appoint counsel to conduct a complete competency hearing. The issues of the failure to provide a competency hearing and a well-prepared court-appointed attorney are inseparable. How a person with a delusional belief system could be competent to hold his own competency hearing is beyond my comprehension. The failure to appoint counsel and hold a competency hearing resulted in a constitutionally unfair trial, without more. But there is more. I'm going to limit my argument to the cumulative error that caused an unfair trial, one that violated the fifth bill and the sixth bill of the Bill of Rights, adopted as amendments to the Constitution. I also want to discuss the surprising Moran case. I do not want to argue the bona fides of Mr. Schiff's tax theories, although they do have some rational basis. By the way, we're going to reserve four minutes total of the appellants. Judge Dawson's cumulative erroneous rulings resulted in a fundamentally unfair trial, as that subject is known in the law, and the doctrine of harmless error does not trump a constitutional violation. Besides the failure to appoint counsel, which I say is a constitutional violation, hold a competency hearing, Judge Dawson excluded relevant evidence and blocked Schiff's defense. He sua sponte required Schiff to make a proffer for all of his proposed witnesses. He did not require the government to do so. Dawson demeaned and humiliated Schiff in front of and outside the jury's presence, and showed his bias against Schiff from the outset of the trial, as revealed at the sentencing hearing, when he said personally, I have to pay more taxes because of you. He wouldn't allow Schiff to say I when he was questioning witnesses. He refused to allow Schiff daily He restricted Schiff's interrogation of himself by sua sponte requiring him to write out questions in advance, including questions on direct. He Mirandized some of Schiff's witnesses to intimidate them. Judge Dawson found Schiff in contempt of court and imposed an illegal and vindictive sentence without any trial or the jury trial before another judge to which he was entitled. Dawson, by giving Schiff a vindictive and unreasonable sentence after Schiff moved to recuse him, showed he had a preformed bias against Schiff. Dawson gave erroneous instructions to the jury and refused Schiff's tendered instructions. Dawson waited until just before the start of the trial to rule on Schiff's pre-trial motions in order to impede Schiff's trial preparation. Dawson interfered with Schiff's direct and cross-examination of witnesses, refused Schiff's attempts to call relevant witnesses in his defense and prevented Schiff from introducing relevant documents. Dawson gave an unnecessary and erroneous sua sponte interim instruction after holding an ex-party conference with prosecutors. Dawson assumed the role of advocate in interrogating witnesses. The government failed to prove that Schiff was guilty of the offenses for which he was charged and Schiff's motion for acquittal at the close of the government's case should have been granted. No deficiency existed for the years 1979 through 1985 and count 17 should be dismissed as a matter of law because it requires a deficiency. Their own witnesses testified there was no nothing. IRS sections 161, 63, and 6012 cannot be read together according to this court's decision in rote. The government failed to prove Schiff's net income, leaving the jury to believe that his gross receipts was his net receipts. I point out a case some years ago in which I was involved personally, where I was subpoenaed against my client to testify in order for the government to give a net income tax return. And that's how far they would go. They searched his place, they had books and records, they did nothing. They say it was because he was involved in cash. But they didn't even give him any legitimate business expenses. Any business has 50, 60% of legitimate business expenses. They never pointed it out to the court. The government failed to prove all of the elements of the Cheek case and the Moran panel's decision is the correct way to apply Cheek and Bishop. We agree with all the relevant arguments made by the co-defendants and adopt them as our own. They should have been severed from this appeal. If there's any questions, I'd be glad to respond. Thank you, counsel. Good morning, Justices. Michael Cristale appearing on behalf of Cindy Nguyen. May it please the court. I had the good with Mr. Irwin Schiff. And we had from the very inception of this case some concerns about his ability to conduct himself throughout the course of the trial. And why was that so important to me and to my co-defendant? Because we had to present a good faith reliance argument defense in support of Cheeks. And what did we need to do that? What was our reliance to be able to argue before a jury that she had a good faith belief in her theory or in the theory? And our reliance and our beliefs was Irwin Schiff. It was Irwin Schiff's teachings over a 30-year period of time. It was his ability to be charismatic during the course of his seminars. It was his ability to be reasonable in the course of his seminars. And that's what Cindy Nguyen believed in. Cindy Nguyen did not create this theory. In fact, Irwin Schiff was doing this 30 years before she even knew about it. She happened to fall under his spell, like all of the witnesses for the government in this case. She sits in exactly the same situation as each and every one of the individuals that testified on behalf of the government. When I looked at the cases on severance, it seemed like there needed to be a specific trial right or an antagonistic defense that was prejudiced. And that the cases I looked at where the claim was the so-called antics of the pro se defendant, what were hurting the case for saying that this sort of what you're calling prejudice, which is just it detracts from your defense theory, is something that makes the district court's denial of the motion an error. And thank you, Justice. And with regard to that, in the government's position that maybe a curative instruction would fix an outburst by a co-defendant during the course of the trial, that doesn't exist in this case. This case is completely distinguishable. In our situation, in order to convince a jury that Cynthia Nguyen's beliefs were reasonable and based within reason, and for us to be able to present a viable chief's defense, we needed to be able to establish that the teachings or the theories were reasonable. I think we understand your argument. I think Judge Akuta's question was more specific. What's your best case that says that the antics or the conduct of the trial by a co-defendant would lead to an error for failing to sever the trial? Well, I think the United States Supreme Court decision in Zafiro is our most significant case, because it states, and through the course of all of the cases cited by ourselves and by the government, that severance should be granted whenever there is a serious risk that a joint trial would prejudice a specific trial rate of one of the defendants or prevent the jury from making a reliable judgment. If you go through each and every witness, okay, I moved for severance, I think, up to 25 times during the course of this trial. We had some concerns before trial began. We actually, which was extraordinary, had such concerns about Mr. Schiff's ability to conduct himself reasonably during the course of the trial, asked the court to appoint counsel to him, which was denied. He then asked to have counsel appointed him during the course of the case. And I think the Mr. Schiff's theories to the jury spilled over and jeopardized my ability to present a Cheeks defense. And that was the concern we have here. There was no way that a jury was going to believe that we had a good-faith reliance on Mr. Schiff's theories after continuous belittlement by the district court judge, and to some extent justifiable in that Mr. Schiff was unable to focus. He became, he was delusional during periods of time. I mean, I could cite witness after witness where the judge cites him. He says, you know, there's probably a lot of things that are popping up that probably shouldn't be. But because of the situation and Mr. Schiff's lack of knowledge, legal procedure and rules, it's difficult not to have things come up. I mean, this is just continuous throughout the course of this trial. It is something that is distinguishable from all the cases, Justices, that talk directly to spillover. And I think we can take it even one step further, that because of Mr. Schiff's attempts to articulate his theory to the jury and articulate its viability, it created an antagonism with our defense. We're up there. If, I guess, if your defense was, I really believe Mr. Schiff. I mean, I was Svengali'd by him. He had me. And there was no doubt in my mind that he was right. Didn't the jury get the opportunity in spades by having a consolidated trial with these defendants to see Mr. Schiff articulate his positions and the way in which he conducted himself in the courtroom, and then weigh the reasonableness of your client and Mr. Cohen's belief as to whether or not it was a reasonable thing for him to do to follow him? And that's why this case is so unusual. I think if Mr. Schiff had a lawyer representing him, I think Joinder would make sense in this case. The problem arises that when we're trying to project Ms. Nguyen's reasonableness, you have an individual who we're relying on that is completely delusional, irrational, and unbelievable. And so if he had a lawyer that was representing his interests during the course of this case, yes, I believe Joinder would be reasonable. Because the lawyer would have been able to present Mr. Schiff in a more reasonable light so that it would have made him look better, and therefore, the jury would have been convinced that it was reasonable for your client to follow him. I think outside of the courtroom, Mr. Schiff was able to communicate his position in a charismatic, fluent manner over a period of 30 years. He was able to influence a number of individuals, individuals who testified on behalf of the government who still believed in his position. The problem became when you put him in the four corners of a courtroom, when he became delusional and unbelievable, he was unable to project himself in any type of a credible way whatsoever. So your argument would have to be that he's delusional in the courtroom, but outside the courtroom, he's not? Well, he's not a lawyer, and he was unable to present a defense in his behalf. He was ineffective for himself. He's delusional. He suffers from it all the time, doesn't he? I don't believe that. I'm not a psychologist or a psychiatrist, and I'm not quite sure that a delusional state would be consistent throughout someone's day. I don't know if they can go in and out of delusion. What you articulate was kind of a Jekyll and Hyde theory of Mr. Schiff's mental state, that he's fine when he's out there in the world at large doing his thing, but when he's in a courtroom, there's a completely different personality that comes out, and that's not really the Irwin Schiff that your client came to know and love. Yeah, I would say that that is absolutely true. I lived this experience. This individual was incompetent during the course of this trial. There's no question in my mind. But he went out when he was outside the courtroom, not under indictment by the United States. I think the witnesses for the government would memorialize that position. I think if you want to see evidence to that effect, you will see witness after witness after witness testify to their belief system after listening and reading Irwin Schiff's material. So I think his competency outside the courtroom is evidenced by the record. Better have Mr. Bowers get up here, because he's... I don't mean to cut you off, but your co-counsel's been anxious back there. Good morning. I'm so sorry to be brief, Mr. Government Counsel. I adopt the arguments of Ms. Noon through her counsel, Mr. Cristoli. I just have two quick issues I want to touch on, and one is the issue regarding my client, Larry Cohen's ability to present psychiatric evidence on his behalf. Unquestionably, if I had the opportunity to redraft or have input into the report submitted by his psychiatrist, that would read differently today. But as in Finley, that motion in this case was denied the day before trial started without any further investigation as to what about Mr. Cohen's mental state as documented by that psychiatrist might have been helpful to the trier effect and what should have been absolutely precluded. Can you help me on this? The motion attaching the report by the doctor includes the doctor's statements that Mr. Cohen couldn't believe in what he was doing. He couldn't form the intent. And yet the district court ruled on the basis that the report or the testimony of the expert wouldn't go to mens rea. Can you explain that? I was having trouble with that. Your Honor, I apologize. To this day, I have agonized over that little line in that opinion from the district court, because it doesn't make any sense to me. It says, this is just, this doesn't go to mens rea, it's just a justification of his actions. And when the mens rea, in this case, willfulness is the element of the crime, the justification of the actions is exactly what the mens rea is about. So I have never, to this day, been able to understand that opinion. And as I alluded to, I don't think it's appropriate for the psychiatrist to say he didn't have criminal intent. That wouldn't be in, but that's the ultimate question for the jury. Was this gentleman able to form the capacity, based on factors X, Y, and Z that the psychiatrist noted, to be willful? Does the 714B say that the testimony that was at least represented in the report that was attached to your motion is not allowed because it does go to ultimate intent? There is a significant amount of that report that would not be allowed. And that's why I say, if I had the opportunity to have that report drafted differently today, I would. But the important thing, and this is why, this is exactly what happens in Finley. The initial proposed testimony by the psychiatric expert contains outrageous statements that wouldn't be allowed, like mine did. This guy's not guilty. He didn't have criminal intent, all these things. But in Finley, this court, what should have happened in our case, looks to the things that are admissible. The nature and pattern of how this gentleman develops his thoughts. Fixed and rigid thinking. There's a number of factors that are consistent with my report, as well as Finley. And so I believe what should have happened in this case is we should have had an evidentiary hearing, or we should have had a ruling precluding those things that the doctor had in his report that would not have been allowed, but allowing those things that would have bearing on whether or not Mr. Cohen could have had the willfulness, the mental state that's required to commit this offense. And Finley, the court was looking at the proposed testimony, and I suppose that your 12.2 motion with the attached report, the court was entitled to consider as being the proposed testimony. Is there a case that would say that's not what was being proposed, or that there was a requirement for an evidentiary hearing? Well, first of all, Finley, I don't think, as this circuit has heard, I don't think it requires that, but it certainly makes that option available. The other thing is I raise this issue specifically with the court. My brief site's where in the excerpts of record it is, prior to the close of my case, where I say, Your Honor, I understand that these conclusions might not be appropriate here. However, these items of specific comments about his cognitive process, I think, are admissible and don't invade the province of the jury and force the jury to come to a conclusion. Okay. Thank you, counsel. We'll give you some time for rebuttal. I'll hear from the government. Thank you, Your Honors. I guess the way that I'll start, there's a lot of... Please identify yourself for the record. I guess the way that I'll start, there's many issues in this case, and I'll start with two of the main ones that were just addressed. First, the severance issue. As this court pointed out, that generally conduct of a co-defendant is not the basis for severance. If that was the basis, then any co-defendant could get severance by simply, by outrageous conduct. And he could get a new trial and a new judge. And so the cases, the Ninth Circuit cases have held that even outrageous conduct is not the basis for severance. And in this case, there was no antagonistic defense. Schiff's good faith defense was not antagonistic to the good faith defense of Cohen and Nguyen. A jury could accept all the defenses, all the good faith defenses. And Schiff's lack of skill as a trial advocate does not necessarily mean that the jury would infer that he lacked knowledge of tax laws when he testified, simply because he did not understand trial advocacy and was not the best attorney for himself does not mean that the jury would discount his testimony when he got on the stand and testified as to what his views are of the tax law, if his views made sense. Well, I think in the real world, though, the way this trial proceeded, he conducted himself in a manner that would not lend credibility to his statements. Wouldn't you agree? I do not totally agree with that. I believe that he did not, he bumbled around and he didn't understand how to be a lawyer and he admitted constantly to the jury that he didn't really understand what he was doing as a lawyer, but I don't think that necessarily went to his credibility when he came to his testimony. I think the jury could look at him and say, yes, he doesn't know how to defend himself very well, he's not an attorney, but that doesn't mean that I won't listen to what he says about tax laws when he testifies about tax law. Well, except that the entire defense of the other two defendants, not the entire defense, but most of their defense was, look, we really believe this charismatic guy and from the transcript, he appears to be a bumbler, he's not credible in his interactions with the court. So in a claim trial, Schiff probably wouldn't have testified at all, right, if it's severed? If it's severed? Yes, he doesn't testify at all. All they do is talk about how charismatic he was and, you know... I don't know whether he testifies. It seems like they'd need to have him testify in order to say that they were relying on him. But the fact is that there's no evidence... Why would they? All they have to do is say, we relied on him, they show the books, they cross-examine the government witnesses. I mean, if I were in their shoes, I wouldn't call them. You could be correct. I don't know... And he probably would take the fifth if he had counsel anyway, right? That could be correct. But at any rate, there's no indication... Why would he take the fifth if he's already convicted? Well, it depends on which order you try it. It depends on which order of the trial it's from. But regarding their good faith belief in Schiff, there's no evidence that Schiff's conduct during this trial was not in conformity with how he operated in the past. There's no doubt that he was eccentric. But his behavior in the courtroom was really in accordance with what he said to do in his book. And the testimony was that he told people that you have to profess and stick to the idea that you have a good faith belief in all this. And he also said in his book that these court decisions are wrong, which is the arguments that he made during this court. And the crazy ideas that the co-defendants complain of are simply ideas that are from his book regarding the tax law. And those are things that they knew that he believed in and that he had told them about. So it's very hard for me to see that they have a complaint that they got. They basically got what they bargained for. They say they relied on Schiff, and the jury was able to directly evaluate Schiff in person and evaluate their defense. Do you mind talking about the expert shifting to that for a minute? Can I just add one more thing, and that is that if you look at the way the jury the charges of conviction, the jury was clearly able to compartmentalize the charges in this case. Defendant Cohen was not found guilty of the conspiracy. He was only found guilty of one count of assisting in the preparation of false returns. He was not found guilty of evasion of his own taxes. Defendant Nguyen was convicted of the conspiracy, but she was not convicted of certain counts of assisting in the preparation of false returns. So I think there's clear evidence here that the jury was able to compartmentalize the counts. Let's turn to the exclusion of the expert witness. How do you deal with Finley? It's pretty... Leroy Schweitzer, who was a charismatic, but probably somewhat delusional character, persuaded a lot of people. You ask the question of how did the judge make this conclusion that the psychologist's report did not show that his conclusion did not show that Cohen lacked the capability of forming the mens rea. And I think that's a correct conclusion, because the narcissism diagnosis does not go to the ability to understand the law, and it does not go to his ability to act volitionally. Under Cheek, willfulness is an intentional violation of a known legal duty. Therefore, narcissism did not go  to the ability to understand the law. I'm sorry. Go ahead. I'm sorry for interrupting. I'm just confused by the district court's ruling, because if the district court was correct in saying that defendants' experts didn't explain how the mental disorders negate mens rea, was it then saying that the report or the testimony wasn't admissible because it wasn't relevant? Because Finley seems to directly address in Morales the predicate-type information which is allowed in, upon which the jury could reach a determination. Yes, I think at that point the judge was sort of excluding the parts of the psychologist's report where the psychologist said I believe that Mr. Cohen did not have an intent to violate the law, and the judge was only looking at the narcissism diagnosis. And the narcissism diagnosis doesn't show that Cohen was incapable of the requisite mens rea, as I just said. It just goes to the fact that he's stubborn in refusing to comply with the law. It doesn't say that he's unable to understand the law. In Finley the psychologist's evidence went to defendants' ability to understand whether these checks that he used were real. And in Finley, the psychologist opined that the defendant had delusions. In this case, the psychologist that interviewed Cohen said that there were no delusions. And that's page 7 of the report. He says there's no evidence of delusions. And I think the delusional difference is a big difference between Finley. Because in Finley, the person could believe that these checks were real when they weren't real, because of his belief system. But narcissism isn't the same. It's a different diagnosis. Narcissism only means that you, and this is what the psychologist's opinion says, is that he had a stubbornness in refusing to accept ideas that were not his own, and in complying with those types of ideas. Well, what do you make of this in Finley, where they talk about Wicks, who's the expert in that case, testimony. And they say, the jury could accept Dr. Wicks' diagnosis and still find that Finley knew the instruments to be fraudulent. In other words, the idea is, look, he could testify and the jury could still believe or understand that the instruments were fraudulent. It seems to me that it's pretty close to what we have here, isn't it? Well, it's close to what we have here, but in that case, in Finley, the diagnosis of having delusions went to his ability to form the mens rea. In this case, again, the diagnosis of narcissism has no bearing on his capability of forming the mens rea, because it doesn't say that he can't understand the law, and it doesn't say that he can't act volitionally. And if I could just add, under cheek, if you have a disagreement with the law, that is not a defense.  And narcissism creates a disagreement and not a misunderstanding. The reason I'm puzzled here is because the expert who examined Mr. Cohen reached the conclusion that this mental disease would cause him not to intend to violate the law. And so I'm not sure why we don't credit what the psychiatrist who examined him concluded that the mental disease would cause him to do. I understand that. But, again, that's the leap the psychologist is making that takes into consideration his evaluation of whether the defendant was believable in this case. And he's adding that to narcissism and also saying, I believe this guy, therefore, I mean, he says that repeatedly that I believe what Mr. Cohen says, that I believe that he did not intend the law. And so he's taking the narcissism personality disorder and he's adding that to something that's not admissible and that is his opinion that he believes that Mr. Cohen did not intend to commit these crimes and he's coming to that conclusion. Let me also state that in this case the standard of review is abuse of discretion. And as the court has pointed out, the defendants' failure in deciding what to do, and that was in part because of the defense's failures. The defense was asking for admission of the whole report. They failed to separate inadmissible portions as to the ultimate issue from other psychological testimony. Even in his reply to the government's opposition to letting in this information, he quotes the psychologist as saying that defendant did not intend to do anything illegal and therefore this goes to intent. In his motion in reply, he never sets out a theory of how the testimony could negate mens rea. Sorry, Your Honor. Well, I've been listening to your argument and comparing what the expert testimony was in this one, and it is pretty close because Wick says under his version of delusion that the defendant tends to hear what he wants to hear and believe what he wants to believe about someone and goes on to say that he had a belief system. And then here, in this case, his positions are based, I'm quoting now from the expert report, his positions are based on a way of thinking instead of beliefs that are duly held and cultivated over a lifetime. I just don't see much difference in the testimony that's proffered, at least in that respect, in Finley and this case. Absent Finley, I think you've got a pretty good argument, but Finley is pretty close. Yes, and I think one of the big differences is the fact of delusions. I think delusion makes a big difference in what someone's knowledge are. And the second difference, I think, is what the intent elements are in this case, and that's Cheek where Cheek has held that it's an intentional violation of a known legal duty and that a disagreement with the law is not a defense, but a misunderstanding is. And I don't think that this narcissism diagnosis creates a misunderstanding. It creates a disagreement. He believes, he has a stubborn belief that he's right, and he discounts the law that's to the contrary, and that's specifically what Cheek said is a disagreement, which is not a defense to a tax crime. So I think those are the two main differences. I think the delusion is a main difference and the difference in what exactly was the intent in this case and the crime, if that makes sense. But additionally, I think, as I was getting back to what defense asked for, I think the judge was right and did not abuse his discretion based on what the defense actually asked for. In his motion and reply, he never sets out his theory of how the testimony negated the mens rea. He never refutes the government's argument in its opposition that the testimony did not negate mens rea. And this left the judge simply trying to guess at what the theory could be on how the defendant, what the defendant's theory was for how the testimony negated mens rea. And I think that puts a little weight on the judge's side that it was not abuse of discretion because the defendant had simply not briefed this well and not done his job in making his arguments. The judge also had to determine how to separate the issues, the ultimate issues, from the other issues, and they were very intertwined, as you have mentioned in the opinion, between his ultimate his opinions that reached the ultimate issue that the defendant actually did not intend to commit the crime and the narcissism. Finally, if we get to harmlessness, and I don't think that we need to get to harmlessness, but if you get to harmlessness, we have an argument that the exclusion of this evidence was harmless. And that is that Mr. Cohen made misstatements that were shown at trial to be misstatements to the psychologist. First, he said that he was only a receptionist. Second, he said he had no profit motive at all for what he did. And the evidence at trial clearly refuted those statements that he made to the psychologist. And again, that doesn't go to admissibility, but it does go to the weight of the evidence. It goes to the weight of the evidence, and I think that a psychologist's report that you can show that the defendant was lying to the psychologist has very minimal value to a jury, and a jury is going to discount it. And therefore, it was harmless and you have a fair assurance that the exclusion of this did not affect the jury. Because first, we could have shown that the defendant was lying right before the trial to the psychologist. And second, we can show that the psychologist's opinion was, at least to some degree, based on false statements made to the psychologist. Does the court have any questions on any other issues? I don't think so. I think we have your argument at hand. It's been well briefed, so we thank you for your argument. Your Honors, this was not a trial that should ever be cited as an example of American justice. It's a tragedy. I think Judge Thomas asked a very reasonable question when he said, would it be possible that if, at the outset, it was reasonable for the three people to be tried together. There's no question that it would have been reasonable. Judge Thomas also indicated some indication that he was, Mr. Schiff was delusional inside the court, but not outside the court, a Jekyll and a Hyde. Well, anybody who knows anything about psychosis understands how that's possible. There were three psychiatrists, I mean, one psychiatrist, two clinical psychologists, who said that his belief that a court of law is going to uphold his arguments is delusional, psychotic delusional. On top of that, he had the psychosis of, it used to be called I forgot the name of it, but bipolar. That was one of the reports, which is psychotic. And Justice Cato, you said something about testimony. There wasn't any testimony at the competency hearing. That's what caused the problem. There was the Cohen letter, which contained two reports about Mr. Schiff that the government intentionally excluded during the first hearing before the first magistrate. They had it, and they didn't provide it to the court. It wasn't provided until the second, what they called the second Feretta hearing. By the way, Feretta is the case that I think you're looking for. This man had two prison convictions, and the government says that's proof that he was willful. That's proof that he's delusional, if anything. Nobody that I know that had any sense whatsoever could ever think that a third time would require an innocent verdict. So you're dealing with an unusual person who may appear reasonable at times. I've had countless calls with him from prison. He understands what I say to him. He understands why this defense might not work. In other words, he's able to deal adequately with counsel. He would not be a person who would become a Bobby Seale that you had to put handcuffs on and put him in a seat. He's not that type of unreasonable person. He's not a venal person, although that's how the government described him. You should wrap up. Your time is up. This was a circus-like trial, and I think all three defendants deserve an American trial. Fair trial. Thank you. With regard to the government's position that even outrageous conduct by a co-defendant during the course of a trial is not sufficient to justify joinder, all the cases cited by the government in this case are distinguishable from our case. There's absolutely no case where an individual creates such an antagonistic situation with the court and the jury that it trickles down to such an extent and almost creates an antagonism with our defense. Certainly, by Mr. Schiff trying to communicate the legitimacy of his theory created an antagonism in my ability to present a good-faith cheek's defense, that my client was mistaken in her belief system. But if it's antagonistic in the sense that it doesn't make any sense and the jury listens to it and sees how he presents it, why is that not relevant to determining whether your client in good faith could reasonably have believed it? Well, I think his inability to conduct himself within the parameters of the laws in the court is a significant detriment to everybody. I think if you look at this record, you'll see that. You'll see time and time again during the course of maybe my cross-examination or Mr. Bauer's cross-examination that Mr. Schiff got up there and completely unwound what we had already accomplished. Well, that happens at trial, you know, with any co-defendant. But there's, I think the question here, the defenses aren't antagonistic in theory, right? In theory, they are not. However, when Mr. Schiff gets up there and tries to argue the legitimacy of his theory instead of his good faith belief upon his theory, it creates an antagonism with my ability to argue reliance in a good faith way according to Cheeks. Doesn't that show the sincerity of his belief? I mean, the argument that I heard Mr. Waxman making is that call him what you will, but this guy really believes in his heart of hearts that this is so and someday an enlightened court will accept his theory. And was it your client's defense that I believe that too? I mean, I thought Mr. Schiff was right. If he had the ability to present that to the jury in his own way, I believe he would have been able to do it competently. However, he had an antagonism with his court that was insurmountable. There was constant arguments between Judge Dawson and Mr. Schiff in front of the jury. Isn't that antagonism born of the fact that the court is issuing rulings that basically are adverse to his position and he's not happy with those adverse rulings and so he would not adhere to those rulings. He refused to adhere to any of the rulings causing him to fail. How is that different from his views on the tax laws which are clearly antagonistic and at odds with the position that the Internal Revenue Service takes? His inability to conform with the judge's orders in this case created an antagonism with the court that there's no question that this jury, as a result of that, did not believe that what he was saying was reasonable. You have a judge but let me interrupt for a second. How do you deal with the government's response which is look, the jury didn't convict these other defendants of all accounts so they were able to discriminate. They convicted Ms. Noon of the counts and they were not able to compartmentalize with regard to Cindy Noon. Here's the problem you have with Cindy Noon. She was Irwin Schiff's girlfriend and she was 25 years younger than him. She was somebody who was under his spell and I think that the problem with the jury is they could not separate her from Mr. Schiff. I think because of that relationship, the relationship that existed, the relationship that the government tried to develop as one of togetherness. It's not the question that Judge Thomas asked you. The question is whether or not in light of the split verdicts, isn't that in our case law evidence that the jury was able to compartmentalize the evidence and to fairly gauge the evidence against each defendant as to each account he or she faced? Well not as far as Ms. Noon is concerned. I think the one aspect of the case when they chose not to convict Mr. Cohen of certain counts, I don't know whether or not that eliminates any of the taint that was caused throughout the course of this trial and now we can say yes, they were able to convict him. I just don't believe that is the case from my perspective. I think my client sits in the same seat as a number of the government witnesses. These were reasonable people that testified on behalf of the government. None of which had ever said that Cynthia Noon did not have a good faith belief. An individual who never profited from this organization, you have to understand. The government, despite the fact that they presented financial after financial after financial to try to establish that Irwin Schiff had profited from this organization over a number of years, there is absolutely no evidence, in fact evidence to the contrary, that Ms. Noon profited at all. And that's another significant problem in terms of the joinder in this matter. Thank you. I think we have your argument at hand. Thank you counsel. If I may, I know we're over and I'll be as brief as possible. Judge Tavis, your comments were exactly right. This is Finley. The difference is in Finley the court stopped and took the time to figure out what the psychologist was saying and what relevance that may have. And I bear full responsibility for probably not briefing that motion as well as could have been done and as well as I would do it if I had the opportunity today. But I stopped at the conclusion of that trial and I said, Your Honor, let's look past the labels which is exactly what Finley did. They didn't focus on a diagnosis but they focused on a thought process and things that affected the defendant's thinking which is exactly what you did. And I said let's look at his fixed thinking. Let's look at his obsessions. Let's look at all these things. And this is relevant evidence that this jury ought to hear. Judge Dawson says no, this doesn't change my mind. Let's go. Let's move forward with this trial. So the difference is that judge stopped and looked and this judge didn't. But other than that the facts are exactly the same. And if it comes down to the fact that I inartfully drafted that motion, then that's my fault. And that doesn't have anything to do with the merits of whether Mr. Cohen should have been afforded the opportunity to present that argument. The standard for willfulness, although the Cheek decision doesn't bear on the crime that was discussed in Wicks, it's still the same standard. You can't knowingly disregard something. And I think in being as brief as possible, I think that summarizes my position. Thank you. Thank you, counsel. The case just heard will be submitted. Mr. Waxman, before we leave, we issued an order to show cause. Do you have any answer to the order to show cause in the motion to evict? All right. Thank you very much.
judges: Thomas, Tallman, Ikuta